UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NICOLE MCGAUGH,

        Plaintiff,                 Judge Robert Jonker
                                Magistrate Judge Phillip J. Green

v                                 No. 24-00368

HOLT PUBLIC SCHOOLS and
JESSICA COTTER,

        Defendants.

_____/

| | |
|---|---|
| ELIZABETH K. ABDNOUR (P78203) | TIMOTHY J. MULLINS (P28021) |
| ABDNOUR WEIKER, LLP | TRAVIS M. COMSTOCK (P72025) |
| *Attorney for Plaintiff* | GIARMARCO, MULLINS & HORTON, P.C. |
| 500 E. Michigan Ave., Suite 130 | *Attorneys for Defendants* |
| Lansing, MI 48912 | 101 W. Big Beaver Road, 10th Floor |
| (517) 994-1776 | Troy, MI 48084-5280 |
| liz@education-rights.com | (248) 457-7020 |
| | tmullins@gmhlaw.com |
| | tcomstock@gmhlaw.com |

## ANSWER

      Defendants, HOLT PUBLIC SCHOOLS, including the improperly named HOLT PUBLIC

SCHOOLS BOARD OF EDUCATION, which is a constituent part of a Michigan Public School

District as provided by the Michigan Revised School Code, and JESSICA COTTER, by and

through their attorneys, GIARMARCO, MULLINS & HORTON, P.C., state their answer to

Plaintiff's Complaint as follows:

## JURISDICTION AND VENUE

1.    This Court has original jurisdiction over Plaintiff's federal claims under 28 U.S.C. §

      1343 and 28 U.S.C. § 1331.

**ANSWER:**    Defendants neither admit nor deny the allegations contained therein for the reason

that they constitute conclusions of law, rather than allegations of fact, and, therefore, leave Plaintiff to her proofs thereon with a final determination to be made by the Court.

2.    The Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367.

**ANSWER:**    Defendants neither admit nor deny the allegations contained therein for the reason that they constitute conclusions of law, rather than allegations of fact, and, therefore, leave Plaintiff to her proofs thereon with a final determination to be made by the Court.

3.    Pursuant to 28 U.S.C. § 1391(b), venue lies in the Western District of Michigan as the events giving rise to this action occurred in Holt, Michigan.

**ANSWER:**    Defendants neither admit nor deny the allegations contained therein for the reason that they constitute conclusions of law, rather than allegations of fact, and, therefore, leave Plaintiff to her proofs thereon with a final determination to be made by the Court.

## PARTIES

4.    Plaintiff Nicole McGaugh has been employed as a teacher in Holt Public Schools for 23 years, currently serving as a seventh-grade math teacher. At all times pertinent to this suit, she resided in Ingham County, Michigan.

**ANSWER:**    Defendants neither admit nor deny the allegations contained therein for lack of knowledge upon which to form a belief and, therefore, leave Plaintiff to her proofs.

5.    Defendant Holt Public Schools ("HPS") was at all relevant times and continues to be a public educational institution in Ingham County, Michigan, organized and existing under the laws of the State of Michigan.

**ANSWER:**    Defendants affirmatively aver that Holt Public Schools is a Michigan Public School District performing a governmental function in Ingham County, Michigan, to wit,

providing a public education to students within the district and, as such, the School is a governmental agency and is immune from suit herein.

6.   HPS Board of Education is the governing body of HPS.

**ANSWER:**   Defendants neither admit nor deny the allegations contained therein for lack of knowledge upon which to form a belief and, therefore, leave Plaintiff to her proofs. Defendants affirmatively aver that the Board of Education performed their duties under the Michigan School Code.

7.   HPS and Defendant Board of Education are hereinafter collectively referred to as "the HPS Defendants."

**ANSWER:**   Defendants neither admit nor deny the allegations contained therein for lack of knowledge upon which to form a belief and, therefore, leave Plaintiff to her proofs.

8.   At all material times, Defendant Jessica Cotter, in her official capacity, worked within Ingham County, State of Michigan, and was an agent and/or employee of HPS, acting or failing to act within the scope, course, and authority of her employment and employer. At all material times, Defendant Cotter was HPS's Executive Director of Curriculum and Staff Development.

**ANSWER:**   Defendants deny the allegations contained therein for the reason that they are untrue. Defendants affirmatively aver that Defendant Cotter has acted as an employee in various capacities for a period of time.

## APPLICABLE LAW AND POLICY

9.   The Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12111 *et seq*., states that:

> No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring,

advancement, or discharge of employees, employee compensation, job
training, and other terms, conditions, and privileges of employment.

42 U.S.C. § 12112(a).

**ANSWER:**    Defendants neither admit nor deny the allegations contained therein for the reason

that they constitute conclusions of law, rather than allegations of fact, and, therefore, leave

Plaintiff to her proofs thereon with a final determination to be made by the Court.

10.   Under the ADA, the term "covered entity" means an employer, employment agency,

labor organization, or joint labor-management committee.

**ANSWER:**    Defendants neither admit nor deny the allegations contained therein for the reason

that they constitute conclusions of law, rather than allegations of fact, and, therefore, leave

Plaintiff to her proofs thereon with a final determination to be made by the Court.

11.   Under the ADA, 42 U.S.C. § 12111, the term "employer" is defined as:

...A person engaged in an industry affecting commerce who has 15 or
more employees for each working day in each of 20 or more calendar
weeks in the current or preceding calendar year, and any agent of such
person, except that, for two years following the effective date of this
subchapter, an employer means a person engaged in an industry affecting
commerce who has 25 or more employees for each working day in each
of 20 or more calendar weeks in the current or preceding year, and any
agent of such person.

42 U.S.C. § 12111(5)(A).

**ANSWER:**    Defendants neither admit nor deny the allegations contained therein for the reason

that they constitute conclusions of law, rather than allegations of fact, and, therefore, leave

Plaintiff to her proofs thereon with a final determination to be made by the Court.

12.   Under the ADA, the term "discriminate against a qualified individual on the basis of

disability" includes but is not limited to:

(1) Limiting, segregating, or classifying a job applicant or employee in a
way that adversely affects the opportunities or status of such applicant or

4

employee because of the disability of such applicant or employee; …

> (3) Utilizing standards, criteria, or methods of administration--
> (A) that have the effect of discrimination on the basis of disability; or
> (B) that perpetuate the discrimination of others who are subject to common administrative control.

42 U.S.C. § 12112(b).

**ANSWER:**     Defendants neither admit nor deny the allegations contained therein for the reason that they constitute conclusions of law, rather than allegations of fact, and, therefore, leave Plaintiff to her proofs thereon with a final determination to be made by the Court.

13.   Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 701 *et seq*., provides that:

> No otherwise qualified individual with a disability in the United States, as defined in Section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance…

29 U.S.C. § 794(a).

**ANSWER:**     Defendants neither admit nor deny the allegations contained therein for the reason that they constitute conclusions of law, rather than allegations of fact, and, therefore, leave Plaintiff to her proofs thereon with a final determination to be made by the Court.

14.   Section 504 defines a "program or activity" to include all operations of a local educational agency.  29 U.S.C. § 794(b)(2)(B).

**ANSWER:**     Defendants neither admit nor deny the allegations contained therein for the reason that they constitute conclusions of law, rather than allegations of fact, and, therefore, leave Plaintiff to her proofs thereon with a final determination to be made by the Court.

15.   The Persons with Disability Civil Rights Act ("PDCRA") prohibits discrimination in

Michigan based on disability in employment, educational institutions, and public accommodations, and housing, and requires accommodation of disabled individuals. M.C.L. 37.1102.

**ANSWER:**     Defendants neither admit nor deny the allegations contained therein for the reason that they constitute conclusions of law, rather than allegations of fact, and, therefore, leave Plaintiff to her proofs thereon with a final determination to be made by the Court.

16.   PDCRA prohibits retaliation against individuals who complain of discrimination under the Act. M.C.L. 37.1602(a).

**ANSWER:**     Defendants neither admit nor deny the allegations contained therein for the reason that they constitute conclusions of law, rather than allegations of fact, and, therefore, leave Plaintiff to her proofs thereon with a final determination to be made by the Court.

17.   The Elliott-Larsen Civil Rights Act ("ELCRA") prohibits discrimination in Michigan based on "religion, race, color, national origin, age, sex, height, weight, familial status, or marital status" in employment, educational institutions, public accommodations, and housing. M.C.L. 37.2102(1).

**ANSWER:**     Defendants neither admit nor deny the allegations contained therein for the reason that they constitute conclusions of law, rather than allegations of fact, and, therefore, leave Plaintiff to her proofs thereon with a final determination to be made by the Court.

18.   ELCRA prohibits retaliation against individuals who complain of discrimination under the Act. M.C.L. 37.2701(a).

**ANSWER:**     Defendants neither admit nor deny the allegations contained therein for the reason that they constitute conclusions of law, rather than allegations of fact, and, therefore, leave Plaintiff to her proofs thereon with a final determination to be made by the Court.

## FACTUAL ALLEGATIONS

### *Disability Discrimination and Failure to Accommodate*

19. On or around November 9, 2021, Plaintiff was involved in a traumatic incident that occurred at her place of employment at Holt Junior High School ("HJHS"), in which a student reported to her that a 9mm hollow tip bullet found in the hallway outside her classroom.

**ANSWER:** Defendants deny the allegations contained therein for the reason that they are untrue.

20. After the bullet was found, upon information and belief, HPS did not follow its safety plan and took 52 minutes to call the police.

**ANSWER:** Defendants deny the allegations contained therein for the reason that they are untrue.

21. This incident and HPS's failure to respond in accordance with its safety plan immediately caused Plaintiff significant anxiety and she immediately noticed negative health consequences, including an elevated heart rate, speech affected by reversing words, sleep issues, nightmares, mind racing, inability to focus, emotional outbursts, avoidance of going to school and her son's school events, hypervigilance, and reckless behavior.

**ANSWER:** Defendants deny the allegations contained therein for the reason that they are untrue.

22. Plaintiff sent an email on the day of the incident to her principal and upper administration notifying them that she did not feel safe on the date of the incident. Petitioner did not get any response until after the school day was over.

**ANSWER:**     Defendants deny the allegations contained therein for the reason that they are untrue.

23.   Plaintiff struggled with coming back to work after the incident due to her increased anxiety. She went to work on November 11, 2021, and could only teach one hour before she had to go home due to anxiety.

**ANSWER:**     Defendants neither admit nor deny the allegations contained therein for lack of knowledge upon which to form a belief and, therefore, leave Plaintiff to her proofs.

24.   Plaintiff's symptoms continued, and her medical provider prescribed her an additional medication for anxiety.

**ANSWER:**     Defendants neither admit nor deny the allegations contained therein for lack of knowledge upon which to form a belief and, therefore, leave Plaintiff to her proofs.

25.   On or around November 15, 2021, Petitioner submitted a request for Family and Medical Leave Act ("FMLA") leave for a serious health condition, which HPS approved.

**ANSWER:**     Defendants admit the allegation contained therein.

26.   On November 30, 2021, a mass shooting occurred at Oxford High School in Oxford Township, Michigan.  Armed with a 9mm semi-automatic handgun, a 15-year-old student murdered four students and injured seven people, including a teacher.

**ANSWER:**     Defendants neither admit nor deny the allegations contained therein for lack of knowledge upon which to form a belief and, therefore, leave Plaintiff to her proofs.

27.   The Oxford High School shooting caused Plaintiff's anxiety symptoms to worsen.

**ANSWER:**     Defendants neither admit nor deny the allegations contained therein for lack of knowledge upon which to form a belief and, therefore, leave Plaintiff to her proofs.

28.   On or around December 14, 2021, Plaintiff's medical provider diagnosed her with post-

traumatic stress disorder ("PTSD") because of the incident.

**ANSWER:**   Defendants neither admit nor deny the allegations contained therein for lack of knowledge upon which to form a belief and, therefore, leave Plaintiff to her proofs.

29.   At some point after that date, Plaintiff notified HPS that she would need accommodations to return to work.

**ANSWER:**   Defendants neither admit nor deny the allegations contained therein for lack of knowledge upon which to form a belief and, therefore, leave Plaintiff to her proofs.

30.   On or around January 3, 2022, while she was still on FMLA leave and during a school break, Plaintiff received a text message from Charles Richardson, Uniserv Director for the Michigan Education Association ("MEA"), Plaintiff's union.

**ANSWER:**   Defendants neither admit nor deny the allegations contained therein for lack of knowledge upon which to form a belief and, therefore, leave Plaintiff to her proofs.

31.   In this text message, Richardson stated that he and Plaintiff needed to talk soon due to the accommodation request Plaintiff had submitted to HPS.

**ANSWER:**   Defendants neither admit nor deny the allegations contained therein for lack of knowledge upon which to form a belief and, therefore, leave Plaintiff to her proofs.

32.   Plaintiff had not received any communication from Richardson since around November 16, 2021.  She had texted Richardson on November 18, 2021, and December 1, 2021, but did not receive a response to either of those text messages.

**ANSWER:**   Defendants neither admit nor deny the allegations contained therein for lack of knowledge upon which to form a belief and, therefore, leave Plaintiff to her proofs.

33.   Plaintiff had at no time communicated with Richardson about her accommodations request or gave HPS permission to talk to Richardson about the matter.

**ANSWER:**    Defendants neither admit nor deny the allegations contained therein for lack of knowledge upon which to form a belief and, therefore, leave Plaintiff to her proofs.

34. HPS never explained to Plaintiff why it was communicating with Richardson rather than Plaintiff directly.

**ANSWER:**    Defendants neither admit nor deny the allegations contained therein for lack of knowledge upon which to form a belief and, therefore, leave Plaintiff to her proofs.

35. On or around January 13, 2022, Plaintiff submitted a reasonable accommodation request to HPS.

**ANSWER:**    Defendants deny the allegations contained therein for the reason that they are untrue.

36. The reasonable accommodation request stated that Plaintiff was experiencing PTSD, a mental impairment that was restricting her from working and performing the essential functions of her job, and explained that Plaintiff, who experienced intense fear for her and her students' safety as a symptom of her PTSD, needed accommodations to ensure that this fear would not impede upon her ability to perform the essential function of her position.

**ANSWER:**    Defendants neither admit nor deny the allegations contained therein for lack of knowledge upon which to form a belief and, therefore, leave Plaintiff to her proofs.

37. Along with the reasonable accommodation request, Plaintiff submitted HPS's required Health Care Accommodation Assessment Questionnaire ("Accommodation Assessment") completed by her medical provider at Sparrow Medical Group in Lansing, Michigan.

**ANSWER:**    Defendants neither admit nor deny the allegations contained therein for lack of

knowledge upon which to form a belief and, therefore, leave Plaintiff to her proofs.

38.   The Accommodation Assessment listed the following, among others, essential functions of Plaintiff's position: "ability to compare, analyze, and communicate orally and in writing," "implement[ing] and maintain[ing] classroom management," and "instruct[ing] pupils in citizenship, school policies, basic subject matter…." It specified that Plaintiff experienced the following functional limitations because of her "mental impairment that substantially limits one of more of [her] major life activities...": inability to manage tasks, "maintain [her] classroom management," or "maintain [her] concentration." It specified that Plaintiff's functional limitations included an inability "to instruct on fulfilled school policies" or "instruct students on citizenship responsibilities." It explained that due to the functional limitations of Plaintiff's disability, she was "limited in describing safety, citizenship, [and] school policies as the measures to complete these theories have not been initiated" by HPS. It explained that Plaintiff "is not able to maintain classroom management[,] as management entails safety." Addressing Maslow's hierarchy of needs, it stated that "without [Plaintiff's] safety being met, confidence and achievement cannot be expected."

**ANSWER:**   Defendants deny the allegations contained therein for the reason that the Assessment alleged did not list all the essential elements of the job.

39.   At the recommendation of her medical provider, Plaintiff also submitted a list of the following necessary accommodations for her disability to help prevent and relieve stress and anxiety produced by that disability: (1) an updated and revised HPS Emergency Operating Plan ("EOP") to ensure safety of District staff and students; (2) a door with a "solid core" for Plaintiff's classroom with a lock; (3) implementation of a HJHS-wide

safety manual for staff members to ensure understanding and compliance with the new EOP; (4) implementation of a HJHS-wide safety manual for students to ensure understanding and compliance with the new EOP; (5) copies of email communications sent to parents and guardians of School students sent to HJHS staff members; (6) pre-arrangements made for any meeting with the HJHS principal, including the presence of at least one other individual; (7) a 24-hour response deadline to any email sent to HPS administration; and (8) weekly updates from HPS Human Resources department regarding the implementation of her requested accommodations.

**ANSWER:**   Defendants neither admit nor deny the allegations contained therein for lack of knowledge upon which to form a belief and, therefore, leave Plaintiff to her proofs.

40.   On the same date that Plaintiff submitted the reasonable accommodation request and Accommodation Assessment, she submitted an Authorization to Release Medical Information to the HPS. The release specifically authorized HPS to discuss protected health information pertaining to her diagnosis, treatment, prognosis, functional limitations, and restrictions related to her Accommodation Request with her medical providers at Sparrow Medical Group.

**ANSWER:**   Defendants neither admit nor deny the allegations contained therein for lack of knowledge upon which to form a belief and, therefore, leave Plaintiff to her proofs.

41.   Upon information and belief, on or around January 27, 2022, Shanna Janowiak, from HPS's human resources department, contacted  Sparrow Medical Group to request information about Petitioner's paperwork.

**ANSWER:**   Defendants neither admit nor deny the allegations contained therein for lack of knowledge upon which to form a belief and, therefore, leave Plaintiff to her proofs.

12

42. Sparrow Medical Group was unable to share information to Janowiak because Janowiak never sent Plaintiff's signed medical release to Sparrow Medical Group even though Janowiak had it in her possession.

**ANSWER:**   Defendants neither admit nor deny the allegations contained therein for lack of knowledge upon which to form a belief and, therefore, leave Plaintiff to her proofs.

43. Upon information and belief, Janowiak then accused Plaintiff of falsifying the paperwork and fraudulently completing paperwork herself, rather than having a medical provider at Sparrow Medical Group complete it.

**ANSWER:**   Defendants deny the allegations contained therein for the reason that they are untrue.

44. Upon information and belief, Sparrow Medical Group staff told Janowiak that a Sparrow medical provider did fill out the paperwork.

**ANSWER:**   Defendants neither admit nor deny the allegations contained therein for lack of knowledge upon which to form a belief and, therefore, leave Plaintiff to her proofs.

45. Upon information and belief, Janowiak then told Sparrow Medical Group she thought that Plaintiff had added to the form afterward, which was false.

**ANSWER:**   Defendants neither admit nor deny the allegations contained therein for lack of knowledge upon which to form a belief and, therefore, leave Plaintiff to her proofs.

46. Janowiak also stated the accommodation requests constituted "policy changes" and if Plaintiff's condition was that severe, then she was unsafe to work in the classroom.

**ANSWER:**   Defendants neither admit nor deny the allegations contained therein for lack of knowledge upon which to form a belief and, therefore, leave Plaintiff to her proofs.

47. Sparrow Medical Group staff reported these communications to Plaintiff.

13

**ANSWER:**     Defendants neither admit nor deny the allegations contained therein for lack of knowledge upon which to form a belief and, therefore, leave Plaintiff to her proofs.

48.   Plaintiff remained on paid medical leave through the end of the 2021-2022 school year, and her HPS email account was locked and therefore inaccessible to her starting on around February 8, 2022.

**ANSWER:**     Defendants neither admit nor deny the allegations contained therein for lack of knowledge upon which to form a belief and, therefore, leave Plaintiff to her proofs.

49.   On or around March 4, 2022, Erin Quinlan, HPS Director of Human Resources, sent an email to Plaintiff to inform her that her HPS email account would be unlocked and provided a new password for the account.

**ANSWER:**     Defendants neither admit nor deny the allegations contained therein for lack of knowledge upon which to form a belief and, therefore, leave Plaintiff to her proofs.

50.   Plaintiff responded with two emails that same day to inform Quinlan that the password Quinlan had provided was incorrect and that she could not unlock the HPS email account at that time.

**ANSWER:**     Defendants neither admit nor deny the allegations contained therein for lack of knowledge upon which to form a belief and, therefore, leave Plaintiff to her proofs.

51.   Plaintiff asked that Quinlan and HPS communicate with her through her personal email address or by phone until the issue with her HPS email was resolved.

**ANSWER:**     Defendants neither admit nor deny the allegations contained therein for lack of knowledge upon which to form a belief and, therefore, leave Plaintiff to her proofs.

52.   Neither Quinlan nor any other HPS employee responded, and Plaintiff remained unable to access her HPS email.

**ANSWER:**    Defendants neither admit nor deny the allegations contained therein for lack of knowledge upon which to form a belief and, therefore, leave Plaintiff to her proofs.

53.   On or around June 27, 2022, Petitioner sent an email to Quinlan requesting an update on the status of her reasonable accommodation request.

**ANSWER:**    Defendants neither admit nor deny the allegations contained therein for lack of knowledge upon which to form a belief and, therefore, leave Plaintiff to her proofs.

54.   On or around June 28, 2022, Quinlan responded that Janowiak had provided a response to the reasonable accommodation request in February 2022 to Plaintiff's HPS email address.

**ANSWER:**    Defendants neither admit nor deny the allegations contained therein for lack of knowledge upon which to form a belief and, therefore, leave Plaintiff to her proofs.

55.   Plaintiff responded and reminded Quinlan of her March 4 email, stating that she did not have access to her HPS email account and that she had requested that HPS communicate with through her personal email or phone until the email issue was resolved.

**ANSWER:**    Defendants neither admit nor deny the allegations contained therein for lack of knowledge upon which to form a belief and, therefore, leave Plaintiff to her proofs.

56.   Quinlan responded, refusing to use alternative methods to communicate with Plaintiff despite Plaintiff having no access to her HPS email account.

**ANSWER:**    Defendants neither admit nor deny the allegations contained therein for lack of knowledge upon which to form a belief and, therefore, leave Plaintiff to her proofs.

57.   Plaintiff remained unable to access or view Janowiak's response to her reasonable accommodation request.

**ANSWER:**    Defendants neither admit nor deny the allegations contained therein for lack of

knowledge upon which to form a belief and, therefore, leave Plaintiff to her proofs.

### *OCR Complaint*

58. On or around January 8, 2022, Plaintiff filed a complaint with the U.S. Department of Education, Office for Civil Rights ("OCR"), alleging discrimination by HPS against HPS students on the bases of race, color, and disability.

**ANSWER:**    Defendants neither admit nor deny the allegations contained therein for lack of knowledge upon which to form a belief and, therefore, leave Plaintiff to her proofs.

59. On or around July 12, 2022, OCR opened an investigation into Plaintiff's complaint against HPS.[2]

**ANSWER:**    Defendants neither admit nor deny the allegations contained therein for lack of knowledge upon which to form a belief and, therefore, leave Plaintiff to her proofs.

60. The investigation notice identified three areas of investigation:

    a. Whether the District, on the ground of race, color, or national origin, denied a student any service or benefit provided under its program; provided the student services or benefits that were different from or provided in a different manner from services or benefits provided to other students; restricted the student in the enjoyment of any privilege or advantage enjoyed by others; and/or treated the student differently from others in determining whether the student satisfied any requirement or condition which individuals must meet in order to be provided any service or other benefit under the program, in violation of the Title VI implementing regulation at 34 C.F.R. § 100.3(b )(l)(i), (ii), (iv), and/or (v);

    b. whether the District failed to keep timely, complete, and accurate records so that the Department of Education may be able to ascertain whether the District has

complied or is complying with Title VI, in violation of the Title VI implementing regulation at 34 C.F.R. § 100.6(b); and

    c.    whether the District failed to provide qualified student with disabilities with a free appropriate public education (FAPE), in violation of the Section504 implementing regulation at 34 C.F.R. § 104.33.

**ANSWER:**    Defendants neither admit nor deny the allegations contained therein for lack of knowledge upon which to form a belief and, therefore, leave Plaintiff to her proofs.

61.    Upon information and belief, HPS was notified of the OCR investigation on or before that same date.

**ANSWER:**    Defendants neither admit nor deny the allegations contained therein for lack of knowledge upon which to form a belief and, therefore, leave Plaintiff to her proofs.

### *Retaliation*

62.    On July 13, 2022, just one day after OCR had notified Plaintiff that it was initiating an investigation into her complaint, she finally received a letter from HPS's Executive Director of Curriculum and Staff Development, Defendant Jessica Cotter, denying her reasonable accommodation request at her personal email address. [4]

**ANSWER:**    Defendants neither admit nor deny the allegations contained therein for lack of knowledge upon which to form a belief and, therefore, leave Plaintiff to her proofs.

63.    Cotter's letter wrongly asserted that the list of accommodations requested were "outside of the scope of [Plaintiff's] employment."

**ANSWER:**    Defendants deny the allegations contained therein for the reason that they are untrue.

64.    Cotter's letter wrongly asserted that "what you demand as 'reasonable accommodations'

is [sic] in fact the legal responsibility of the District's Board of Education and administration."

**ANSWER:**    Defendants deny the allegations contained therein for the reason that they are untrue.

65.   In fact, accommodations such as a solid core door with a lock and a support person in meetings with her principal would have directly alleviated Plaintiff's PTSD symptoms and would have caused no undue hardship to HPS.

**ANSWER:**    Defendants deny the allegations contained therein for the reason that they are untrue.

66.   Whether anything on Plaintiff's list of requested accommodations was a "legal responsibility of [HPS's] Board of Education and administration" has no bearing on whether such could be considered, provided, or would cause undue hardship to HPS as an accommodation.

**ANSWER:**    Defendants deny the allegations contained therein for the reason that they are untrue.

67.   Cotter's letter inappropriately discredited Plaintiff's medical provider's opinion.

**ANSWER:**    Defendants deny the allegations contained therein for the reason that they are untrue.

68.   Cotter's letter stated that Plaintiff was required to have the questionnaire completed again by a different provider.

**ANSWER:**    Defendants deny the allegations contained therein for the reason that they are untrue.

69.   Cotter's letter unlawfully asserted that "[t]he District will not engage with [Plaintiff]

18

further regarding this list."

**ANSWER:**   Defendants deny the allegations contained therein for the reason that they are untrue.

70.   On or around August 1, 2022, Plaintiff requested a copy to HPS's EOP to determine if the plan was sufficient to accommodate her disability.

**ANSWER:**   Defendants neither admit nor deny the allegations contained therein for lack of knowledge upon which to form a belief and, therefore, leave Plaintiff to her proofs.

71.   On or around August 4, 2022, Quinlan denied Plaintiff's request.

**ANSWER:**   Defendants neither admit nor deny the allegations contained therein for lack of knowledge upon which to form a belief and, therefore, leave Plaintiff to her proofs.

72.   Due to HPS's improper denial of her reasonable accommodation request and its refusal to work with her medical provider, Plaintiff requested another leave of absence due to her disability to continue trying to work through the issues in getting accommodations in place.

**ANSWER:**   Defendants deny the allegations contained therein for the reason that they are untrue.

73.   On or around February 27, 2023, Plaintiff was finally able to return to work with a new position as a Math Interventionist/Consultant, a position which provided most of the accommodations she needed and allowed her to perform the essential functions of her position.

**ANSWER:**   Defendants neither admit nor deny the allegations contained therein for lack of knowledge upon which to form a belief and, therefore, leave Plaintiff to her proofs.

74.   Upon her return, Plaintiff discovered that approximately 13 to 15 of her unit binders,

containing over 20 years of teaching materials related to worksheets, activities, assessments, and lesson plans, were missing.

**ANSWER:**    Defendants neither admit nor deny the allegations contained therein for lack of knowledge upon which to form a belief and, therefore, leave Plaintiff to her proofs.

75. On or around March 13, 2023, Plaintiff met with Cotter and HJHS Principal Dominic Knighten to address the issue of her missing materials.

**ANSWER:**    Defendants neither admit nor deny the allegations contained therein for lack of knowledge upon which to form a belief and, therefore, leave Plaintiff to her proofs.

76. At that meeting, Cotter told Plaintiff the materials were likely thrown away.

**ANSWER:**    Defendants neither admit nor deny the allegations contained therein for lack of knowledge upon which to form a belief and, therefore, leave Plaintiff to her proofs.

### *Attempts to Resolve Concerns Directly with HPS*

77. Plaintiff does not want to file litigation against HPS.  She has taught in the district for 23 years and loves her students and colleagues.

**ANSWER:**    Defendants neither admit nor deny the allegations contained therein for lack of knowledge upon which to form a belief and, therefore, leave Plaintiff to her proofs.

78. Plaintiff attempted to resolve her concerns with HPS without filing litigation.

**ANSWER:**    Defendants neither admit nor deny the allegations contained therein for lack of knowledge upon which to form a belief and, therefore, leave Plaintiff to her proofs.

79. On February 7, 2024, through counsel, Plaintiff sent a demand letter to HPS.

**ANSWER:**    Defendants neither admit nor deny the allegations contained therein for lack of knowledge upon which to form a belief and, therefore, leave Plaintiff to her proofs.

80. On February 19, 2024, counsel for Plaintiff and counsel for HPS engaged in confidential

settlement discussions via phone.

**ANSWER:**      Defendants neither admit nor deny the allegations contained therein for lack of

knowledge upon which to form a belief and, therefore, leave Plaintiff to her proofs.

81.   On March 22, 2024, counsel for Plaintiff sent HPS's counsel and his assistant a specific

list of demands as follow up to the February 19 conversation.

**ANSWER:**      Defendants neither admit nor deny the allegations contained therein for lack of

knowledge upon which to form a belief and, therefore, leave Plaintiff to her proofs.

82.   Counsel for HPS did not respond.

**ANSWER:**      Defendants neither admit nor deny the allegations contained therein for lack of

knowledge upon which to form a belief and, therefore, leave Plaintiff to her proofs.

83.   On March 29, 2024, counsel for Plaintiff sent HPS's counsel and his assistant an email

following up regarding the March 22 email.

**ANSWER:**      Defendants neither admit nor deny the allegations contained therein for lack of

knowledge upon which to form a belief and, therefore, leave Plaintiff to her proofs.

84.   Counsel for HPS did not respond.

**ANSWER:**      Defendants neither admit nor deny the allegations contained therein for lack of

knowledge upon which to form a belief and, therefore, leave Plaintiff to her proofs.

85.   On April 8, 2024, counsel for Plaintiff sent HPS's counsel and his assistant another

follow- up email.

**ANSWER:**      Defendants neither admit nor deny the allegations contained therein for lack of

knowledge upon which to form a belief and, therefore, leave Plaintiff to her proofs.

86.   Counsel for HPS's assistant responded that counsel for HPS "was out of the country and

is catching a plane today to FL" and asked counsel for Plaintiff to call counsel for HPS

on his cell phone.

**ANSWER:**    Defendants neither admit nor deny the allegations contained therein for lack of knowledge upon which to form a belief and, therefore, leave Plaintiff to her proofs.

87.   Counsel for Plaintiff called counsel for HPS's cell phone and left a voicemail.

**ANSWER:**    Defendants neither admit nor deny the allegations contained therein for lack of knowledge upon which to form a belief and, therefore, leave Plaintiff to her proofs.

88.   Counsel for HPS did not respond to the voicemail.

**ANSWER:**    Defendants neither admit nor deny the allegations contained therein for lack of knowledge upon which to form a belief and, therefore, leave Plaintiff to her proofs.

89.   That evening, counsel for Plaintiff sent one final message to counsel for HPS and his assistant notifying them that counsel for Plaintiff was going to have to file this Complaint if counsel for HPS did not respond by 12:00 p.m. on April 9, 2024.

**ANSWER:**    Defendants neither admit nor deny the allegations contained therein for lack of knowledge upon which to form a belief and, therefore, leave Plaintiff to her proofs.

90.   Counsel for HPS did not respond.

**ANSWER:**    Defendants neither admit nor deny the allegations contained therein for lack of knowledge upon which to form a belief and, therefore, leave Plaintiff to her proofs.

91.   The necessity of filing litigation against HPS has caused Plaintiff additional emotional distress and negative health consequences.

**ANSWER:**    Defendants deny the allegations contained therein for the reason that they are untrue.

### *Timeliness of Complaint*

92.   Plaintiff has exhausted her administrative remedies.  On or around September 16, 2022,

she timely filed a complaint alleging discrimination based on disability with the U.S. Equal Employment Opportunity Commission.  On January 10, 2024, she received a Notice of Right to Sue from the U.S. Department of Justice Disability Rights Section.

**ANSWER:**    Defendants neither admit nor deny the allegations contained therein for lack of knowledge upon which to form a belief and, therefore, leave Plaintiff to her proofs.

93.   Plaintiff timely filed this action within 90 days of receipt of her Notice of Right to Sue.

**ANSWER:**    Defendants neither admit nor deny the allegations contained therein for lack of knowledge upon which to form a belief and, therefore, leave Plaintiff to her proofs.

**COUNT I**
**Violation of Title I of the ADA**
**Failure to Accommodate**
**42 U.S.C. § 12111 *et seq*.**
**(The HPS Defendants)**

94.   Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

**ANSWER:**    Defendants hereby incorporate by reference their responses contained in paragraphs 1 through 93 inclusive, as if fully set forth herein.

95.   Plaintiff is a qualified individual with a disability within the meaning of the ADA because she actually and currently has, has a record of, or is regarded as having a physical or mental impairment that substantially limits one or more major life activities.

**ANSWER:**    Defendants neither admit nor deny the allegations contained therein for lack of knowledge upon which to form a belief and, therefore, leave Plaintiff to her proofs.

96.   HPS is a covered entity and an employer under the ADA.

**ANSWER:**    Defendants neither admit nor deny the allegations contained therein for lack of knowledge upon which to form a belief and, therefore, leave Plaintiff to her proofs.

97.   Defendants knew of Plaintiff's disability.

**ANSWER:**   Defendants deny the allegations contained therein for the reason that they are untrue.

98.   Plaintiff requested reasonable accommodations for her disability.

**ANSWER:**   Defendants deny the allegations contained therein for the reason that they are untrue.

99.   Defendants failed to engage in the reasonable accommodation process.

**ANSWER:**   Defendants deny the allegations contained therein for the reason that they are untrue.

100.  If Defendants were asserting that Plaintiff's requested reasonable accommodations would cause them undue hardship—which they did not explicitly assert—they failed to complete an individualized assessment of current circumstances that showed that a specific reasonable accommodation would cause significant difficulty or expense and instead unlawfully relied upon generalized conclusions.

**ANSWER:**   Defendants deny the allegations contained therein for the reason that they are untrue.

101.  Defendants refused to accommodate Plaintiff's disability.

**ANSWER:**   Defendants deny the allegations contained therein for the reason that they are untrue.

102.  Plaintiff can perform the essential functions of the job with or without reasonable accommodation.

**ANSWER:**   Defendants neither admit nor deny the allegations contained therein for lack of knowledge upon which to form a belief and, therefore, leave Plaintiff to her proofs.

**COUNT II**
**Violation of Title I of the ADA**
**Disability Discrimination**
**42 U.S.C. § 12101, *et seq*.**
**(The HPS Defendants)**

103. Plaintiff realleges and incorporates by reference the allegations contained in the previous

   paragraphs.

**ANSWER:**   Defendants hereby incorporate by reference their responses contained in

paragraphs 1 through 102 inclusive, as if fully set forth herein.

104. Plaintiff suffered an adverse employment action in being forced to take extended leave

   due to HPS's failure to accommodate her disability.

**ANSWER:**   Defendants deny the allegations contained therein for the reason that they are

untrue.

105. Defendants treated Plaintiff less favorably than non-disabled employees.

**ANSWER:**   Defendants deny the allegations contained therein for the reason that they are

untrue.

**COUNT III**
**Violation of Section 504 of the Rehabilitation Act of 1973**
**Disability Discrimination**
**29 U.S.C. § 794, *et seq*.**
**(The HPS Defendants)**

106. Plaintiff realleges and incorporates by reference the allegations contained in the previous

   paragraphs.

**ANSWER:**   Defendants hereby incorporate by reference their responses contained in

paragraphs 1 through 105 inclusive, as if fully set forth herein.

107. Section 504 of the Rehabilitation Act of 1973 ("Section 504") and its implementing

   regulations provide, in pertinent part, that "[n]o otherwise qualified individual with a

25

disability . . . shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 20 U.S.C. § 794(a); see also 34

C.F.R. § 104.4(a).

**ANSWER:** Defendants neither admit nor deny the allegations contained therein for the reason that they constitute conclusions of law, rather than allegations of fact, and, therefore, leave Plaintiff to her proofs thereon with a final determination to be made by the Court.

108. A person is an "individual with a disability" under Section 504 if that person experiences "a physical or mental impairment which substantially limits one or more major life activities." 29 U.S.C. § 705(20)(B) (incorporating definition in 42 U.S.C. § 12102 by reference).

**ANSWER:** Defendants neither admit nor deny the allegations contained therein for the reason that they constitute conclusions of law, rather than allegations of fact, and, therefore, leave Plaintiff to her proofs thereon with a final determination to be made by the Court.

109. "Major life activities" include, but are not limited to, "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A).

**ANSWER:** Defendants neither admit nor deny the allegations contained therein for the reason that they constitute conclusions of law, rather than allegations of fact, and, therefore, leave Plaintiff to her proofs thereon with a final determination to be made by the Court.

110. A "program or activity" includes public K-12 school districts, a "department, agency,

26

special purpose district, or other instrumentality of a State or of a local government," and "the entity of such State or local government that distributes such assistance and each such department or agency (and each other State or local government entity) to which the assistance is extended, in the case of assistance to a State or local government."  29 U.S.C.

§ 794(b) (referencing 20 U.S.C. § 7801(30)).

**ANSWER:**    Defendants neither admit nor deny the allegations contained therein for the reason that they constitute conclusions of law, rather than allegations of fact, and, therefore, leave Plaintiff to her proofs thereon with a final determination to be made by the Court.

111. HPS is a "program or activity" under Section 504 and a recipient of federal financial assistance for the provision of elementary and secondary education and is therefore obligated to comply with Section 504 and the regulations under 34 C.F.R. Part 104.

**ANSWER:**    Defendants neither admit nor deny the allegations contained therein for lack of knowledge upon which to form a belief and, therefore, leave Plaintiff to her proofs.

112. Defendants discriminated against Plaintiff by forcing her to take extended leave due to failure to accommodate her disability and by treating her less favorably than non-disabled employees.

**ANSWER:**    Defendants deny the allegations contained therein for the reason that they are untrue.

**COUNT IV**

**Disability Discrimination**
**Persons with Disabilities Civil Rights Act**
**M.C.L. 37.1101 *et seq*.**
**(The HPS Defendants)**

113. Plaintiff incorporates by reference the allegations contained in the previous paragraphs.

**ANSWER:**   Defendants hereby incorporate by reference their responses contained in paragraphs 1 through 112 inclusive, as if fully set forth herein.

114. Defendants are employers within the meaning of PDCRA.

**ANSWER:**   Defendants neither admit nor deny the allegations contained therein for lack of knowledge upon which to form a belief and, therefore, leave Plaintiff to her proofs.

115. Plaintiff is an employee within the meaning of PDCRA.

**ANSWER:**   Defendants neither admit nor deny the allegations contained therein for lack of knowledge upon which to form a belief and, therefore, leave Plaintiff to her proofs.

116. PDCRA prohibits an employer from discriminating against an employee on the basis of disability.

**ANSWER:**   Defendants neither admit nor deny the allegations contained therein for the reason that they constitute conclusions of law, rather than allegations of fact, and, therefore, leave Plaintiff to her proofs thereon with a final determination to be made by the Court.

117. Plaintiff is a person with a disability, and/or was regarded as having a disability by Defendants, and thus is covered by PDCRA.

**ANSWER:**   Defendants neither admit nor deny the allegations contained therein for lack of knowledge upon which to form a belief and, therefore, leave Plaintiff to her proofs.

118. Plaintiff's condition substantially interferes with one or more major life activities.

**ANSWER:**   Defendants neither admit nor deny the allegations contained therein for lack of knowledge upon which to form a belief and, therefore, leave Plaintiff to her proofs.

119. Plaintiff's condition does not prevent her from performing the duties of her job.

**ANSWER:**   Defendants neither admit nor deny the allegations contained therein for lack of knowledge upon which to form a belief and, therefore, leave Plaintiff to her proofs.

120. Defendants discriminated against Plaintiff by forcing her to take extended leave due to failure to accommodate her disability and by treating her less favorably than non-disabled employees.

**ANSWER:**    Defendants deny the allegations contained therein for the reason that they are untrue.

**COUNT V**
**Retaliation**
**Elliott-Larsen Civil Rights Act**
**M.C.L. 37.2101 *et seq*.**
**(The HPS Defendants and Defendant Cotter)**

121. Plaintiff incorporates by reference the allegations contained in the previous paragraphs.

**ANSWER:**    Defendants hereby incorporate by reference their responses contained in paragraphs 1 through 120 inclusive, as if fully set forth herein.

122. Defendants are employers within the meaning of ELCRA.

**ANSWER:**    Defendants neither admit nor deny the allegations contained therein for lack of knowledge upon which to form a belief and, therefore, leave Plaintiff to her proofs.

123. Plaintiff is an employee within the meaning of ELCRA.

**ANSWER:**    Defendants neither admit nor deny the allegations contained therein for lack of knowledge upon which to form a belief and, therefore, leave Plaintiff to her proofs.

124. ELCRA prohibits retaliation and discrimination "against a person because the person has opposed a violation of this act, or because the person has made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding, or hearing." M.C.L. 37.2701(a).

**ANSWER:**    Defendants neither admit nor deny the allegations contained therein for the reason that they constitute conclusions of law, rather than allegations of fact, and, therefore, leave

29

Plaintiff to her proofs thereon with a final determination to be made by the Court.

125. Plaintiff engaged in an ELCRA-protected act when she filed an OCR complaint alleging discrimination against students on the basis of race, color, and disability.

**ANSWER:** Defendants neither admit nor deny the allegations contained therein for lack of knowledge upon which to form a belief and, therefore, leave Plaintiff to her proofs.

126. Defendants retaliated against Plaintiff by denying her request for a reasonable accommodation the day after they became aware of her complaint, refusing to reasonably engage in the interactive process with her, and asserting that they would not engage with her further regarding her list of requested reasonable accommodations.

**ANSWER:** Defendants deny the allegations contained therein for the reason that they are untrue.

## DAMAGES

127. Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

**ANSWER:** Defendants hereby incorporate by reference their responses contained in paragraphs 1 through 126 inclusive, as if fully set forth herein.

128. As a direct and proximate result of the above-described conduct, Plaintiff suffered general, special, incidental, and consequential injuries and damages, past, present, and future, in excess of the jurisdictional threshold of this Court, an amount that shall be fully proven at the time of trial. These past, present, and future damages include, but are not limited to, the following:

    a. Physical injury and suffering;

    b. Pain, suffering, mental, and emotional distress;

    c.   Physical manifestations of emotional distress including embarrassment, loss of self- esteem, disgrace, and humiliations;

    d.   Loss of employment opportunities;

    e.   Damage to her professional reputation;

    f.   Post-traumatic stress disorder;

    g.   Anxiety;

    h.   Depression;

    i.   Sleep disturbances and nightmares;

    j.   Hypervigilance;

    k.   Loss of irreplaceable professional materials;

    l.   Economic loss;

    m. Loss of the ordinary pleasures of everyday life;

    n.   Loss of relationships;

    o.   Travel and travel-related expenses;

    p.   All other ordinary, incidental, or consequential damages that would or could be reasonably anticipated to arise under the circumstances.

**ANSWER:**    Defendants deny the allegations contained therein for the reason that they are untrue.

WHEREFORE, Defendants, HOLT PUBLIC SCHOOLS and JESSICA COTTER, respectfully request that this Honorable Court enter an order of no cause of action as to Defendant, together with costs and attorney fees so wrongfully sustained.

        /s/TIMOTHY J. MULLINS_____
        GIARMARCO, MULLINS & HORTON, PC
        Attorney for Defendants

DATED: June 10, 2024

## **AFFIRMATIVE DEFENSES**

Defendants, HOLT PUBLIC SCHOOLS and JESSICA COTTER, by and through their attorneys, GIARMARCO, MULLINS & HORTON, P.C., state their Affirmative Defenses as follows:

1.      Plaintiff's Complaint fails to set forth a claim or cause of action upon which relief can be granted as prayed.

2.      Defendants will show that at all times relevant hereto that they were engaged in a governmental function acting within the scope of its authority and, as such, they are immune from suit for civil damages as set forth in Plaintiff's Complaint.

3.      Defendants will show that at all times relevant hereto, they acted without malice, ill will and in good faith in the performance of their duties and, as a result, they are immune from suit and recovery by Plaintiff in this case.

4.      Plaintiff's Complaint is conclusory in nature and fails to state a claim and sufficient facts upon which relief can be granted as required by the Americans With Disabilities Act, 42 USC 12102, the Persons With Disabilities Civil Rights Act, MCL 37.1101-1607 or Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000 et seq.

5.      Plaintiff's claims are barred by 42 U.S.C. § 2000e-5(e)(1) and 29 C.F.R. § 1601.13(c).

6.      Defendants will show that Plaintiff has failed to prove any deprivation of a Federal right, nor has Plaintiff alleged or proven an act of deprivation taken under color of law sufficient to maintain an action based upon Michigan or Federal statutes, including FMLA, Americans With Disabilities Act, 42 USC 12102, the Persons With Disabilities Civil Rights Act, Title VII of the Civil Rights Act of 1964, or MCL 37.1201 et seq.

7.      Defendants will show at the time of trial that Plaintiff was guilty of negligence or other conduct which contributed to the incident complained of, and her conduct in this regard was the sole or partial cause of any injury complained of, and Plaintiff's recovery should be barred or diminished to the extent of such conduct.

8.      Defendants will show at the time of trial that they were guided by and strictly observed all legal duties and obligations imposed by law or otherwise, and further, that all actions of any of Defendants' agents, servants, employees or associates were careful, prudent, proper and lawful.

9.      Defendants will show and rely upon at the time of trial that Plaintiff, as a matter of law, is not entitled to exemplary or punitive damages.

10.     Defendants will show and rely upon at the time of trial that they are not subject to liability under the relevant statutes or contractual provisions.

11.     Defendants will show and rely upon at the time of trial that Plaintiff's claims are preempted by Federal and State law.

12.     Defendants will show and rely upon at the time of trial that any injuries complained of were proximately caused by third persons not under the control of Defendants.

13.     Plaintiff did not request an accommodation or take advantage of such other employment opportunities as were available to her and, to the contrary, has and still claims that she is disabled from employment.

14.     Plaintiff did not act in good faith.

15.     Plaintiff never contested her work absence by way of filing a grievance or otherwise exercising any of the administrative and/or contractual administrative remedies afforded her by way of contract, neither asserting such remedies personally or by way of governmental

administrative charge or complaint. As a result of failing to exercise any or all such administrative remedies available to her prior to filing suit herein, the within suit should be barred and dismissed.

16.     Plaintiff has failed to exhaust her administrative and/or contractual remedies.

17.     This Court lacks jurisdiction over the subject matter of Plaintiff's Complaint.

18.     Any conduct and/or actions complained of by Plaintiff herein were authorized, consented to and have otherwise been released by Plaintiff, particularly in light of her continued employment with the School District.

19.     Defendants will show and rely upon at the time of trial that Plaintiff has failed to provide proper and timely notice to Defendants.

20.     Defendants will show and rely upon at the time of trial that all actions complained of in Plaintiff's Complaint were absolutely or qualifiedly privileged pursuant to the Constitutions, statutes and common law of the State of Michigan and of the United States, and Defendants has never acted or communicated with malice in reference to the Plaintiff.

21.     Plaintiff's Complaint is barred by the provisions of the Eleventh Amendment.

22.     Plaintiff's claim is barred by the applicable expiration of the Statute of Limitations.

23.     Defendants will show and rely upon at the time of trial that Plaintiff is not capable of performing the essential elements of the job assignments she bases her Complaint upon.

24.     Defendants will show and rely upon at the time of trial that there was no discriminatory and/or retaliatory intent.

25.     Defendants will show and rely upon at the time of trial that Plaintiff has failed to mitigate her damages.

26.     Defendants will show and rely upon at the time of trial that all sums due and owing Plaintiff have previously been fully satisfied and paid by Defendants and released by Plaintiff.

27.     Plaintiff's cause of action, in whole or in part, is barred by the exclusive remedy provisions of the Michigan Workers' Compensation statute and she is estopped from bringing this claim as a result of claiming disability.

28.     Defendants will show and rely upon at the time of trial that at all times, they were acting in good faith for legitimate non-discriminatory business reasons.

29.     Defendants will show and rely upon the failure or a necessary condition precedent having been fulfilled or the failure of appropriate consideration as a bar to Plaintiff's action herein and, in particular, has failed to meet the condition precedent to the within action by failing to submit the matter to arbitration.

30.     Plaintiff's claim is barred by the provisions of her Contract of Employment and/or Collective  Bargaining Agreement.

31.     Defendants will show and rely upon at the time of trial that Plaintiff did not request a leave for medical reasons.

32.     Defendants will show and rely upon at the time of trial that Plaintiff did not provide the employer with the reasons for the time she missed from work.

33.     Defendants will show and rely upon at the time of trial that it had just and sufficient reasons for reassigning employment with the Plaintiff.

34.     Plaintiff is not a qualified individual with a disability, i.e., she is not disabled within the meaning of the ADA or is unable to perform the essential functions of the job even with a reasonable accommodation.

35.     As defined by the ADA, plaintiff is a non-employee of Defendant School District.

36.     Plaintiff's ADA claim against the School District is barred because former employees are not employees for purposes of the ADA.

37.     Plaintiff's ADA claim is barred by the defense of undue hardship.

38.     Plaintiff's FMLA claim against the School District is barred because Plaintiff did not work at least 1250 hours as an employee of Defendant School District during the 12 month period preceding the complained of incident.

39.     Plaintiff's FMLA claim is barred because Plaintiff provided deficient notice under the FMLA.

40.     Plaintiff failed to comply with Defendant School District's usual and customary notice and procedure requirements for requesting FMLA leave.

41.     As defined by the FMLA, Plaintiff did not suffer a serious health condition.

42.     Plaintiff's ADA claim is barred by the defense of business necessity.

43.     Plaintiff's employment is governed by a Collective Bargaining Contract which provides that disputes arising from her employment such as raised herein are subject to resolution by arbitration. Therefore, this matter must be dismissed and referred to arbitration for resolution of the issues raised in Plaintiff's Complaint as Plaintiff has failed to exhaust her contractual and/or administrative remedies.

44.     Defendants reserve the right to amend their Answer, including additional Affirmative Defenses, upon completion of investigation and discovery of this cause.

/s/TIMOTHY J. MULLINS
GIARMARCO, MULLINS & HORTON, PC
Attorney for Defendants

DATED: June 10, 2024

**RELIANCE UPON JURY DEMAND**

Defendants, HOLT PUBLIC SCHOOLS, including the improperly named HOLT PUBLIC SCHOOLS BOARD OF EDUCATION, which is a constituent part of a Michigan Public School District as provided by the Michigan Revised School Code, and JESSICA COTTER,, by and

through their attorneys, GIARMARCO, MULLINS & HORTON, P.C., hereby rely upon the jury

demand previously filed by Plaintiff as to all issues of trial.

/s/TIMOTHY J. MULLINS
GIARMARCO, MULLINS & HORTON, PC
Attorney for Defendants

DATED: June 10, 2024

## <u>CERTIFICATE OF ELECTRONIC SERVICE</u>

TIMOTHY J. MULLINS states that on June 10, 2024, he did serve a copy of the **Answer, Affirmative Defenses and Reliance Upon Jury Demand** via the United States District Court electronic transmission.

/s/TIMOTHY J. MULLINS
GIARMARCO, MULLINS & HORTON, PC
Attorney for Defendants
101 W. Big Beaver Road, 10th Floor
Troy, MI 48084-5280
(248) 457-7020
tmullins@gmhlaw.com
P28021